[S. F. No. 6205. In Bank.—November 20, 1912.]

## FRED MILLER, Petitioner, v. A. J. PILLSBURY et al., Respondents.

EMPLOYERS' LIABILITY ACT—INJURY TO EMPLOYEE—ACT NOT APPLI-
CABLE TO STATE AS EMPLOYER.—The state of California, as an em-
ployer, is not bound by the provisions of section 4 of the
"Employers' Liability Act" (Stats. 1911, p. 796), to make com-
pensation to an employee for personal injuries received by him in
the course of his duties as an employee. There is nothing in the
terms of the act which can be construed as indicating an intention
on the part of the legislature to regard the act in its present form
as binding on the state.

ID.—CONSTRUCTION OF ACT—ELECTION TO BE BOUND BY COMPENSATORY
FEATURES OF ACT.—By the terms of the "Employers' Liability Act,"
its application is, generally speaking, made to depend upon the elec-
tion of both parties to the contract of employment. In the absence
of such mutual agreement the injured employee must have recourse
to his claim for damages, or in other words must proceed to enforce
the employer's "liability" as distinguished from the "compensa-
tion" which might be due under the act.

ID.—STATE NOT LIABLE FOR INJURIES TO EMPLOYEES.—A sovereign
state is not bound at all to compensate an individual employee for
injuries sustained while in its service, and no right of recovery in
favor of such employee exists except by statute.

ID.—STATUTE PERMITTING STATE TO BE SUED STRICTLY CONSTRUED.—
Statutes permitting the state to be sued are in derogation of its
sovereignty and will be strictly construed. The "Employers' Lia-
bility Act" must, therefore, be strictly construed and in such manner,
if possible, to preserve to the state its nonliability for injuries to
those in its service.

APPLICATION for a Writ of Mandate directed to the
Industrial Accident Board of the State of California.

The facts are stated in the opinion of the court.

Aaron L. Spiro, for Petitioner.

U. S. Webb, Attorney-General, for Respondents.

MELVIN, J.—Fred Miller, petitioner herein, applied to the
respondents constituting the Industrial Accident Board of the

state of California, to hear his application concerning compensation for injuries received by said Miller in the course of his duties as an employee of the state. The board refused to hear said application upon the ground that the state is not an employer bound by the provisions of the "Employers' Liability Act." (Stats. 1911, p. 796.) An alternative writ of mandate was issued in which the board was required to hear Miller's application or to show cause why such action should not be had. Respondents appeared and demurred to the petition for a writ of *mandamus*. The questions raised being purely those which arise out of the interpretation of the "Employers' Liability Act," the controversy may be determined by our decision upon this demurrer.

By the terms of the statute its application is, generally speaking, made to depend upon the election of both parties to the contract of employment. In the absence of such mutual agreement the injured employee must have recourse to his claim for damages, or in other words must proceed to enforce the employer's "liability" as distinguished from the "compensation" which might be due under the act. By section 3 of the act the general responsibility of employers under the theory of compensation is fixed as follows:

"Liability for the compensation hereinafter provided for, in lieu of any other liability whatsoever, shall, . . . exist against an employer for any personal injury accidentally sustained by his employees, . . . where the following conditions of compensation concur:

"(1) Where . . . both the employer and employee are subject to the provisions of this act. . . .

"(2) Where . . . the employee is performing service growing out of and incidental to his employment. . . .

"(3) Where the injury is approximately caused by accident. . . .

"And where such conditions of compensation exist . . . the right to the recovery of such compensation . . . shall be the exclusive remedy against the employer for such injury or death. . . ."

The principal point of difference between petitioner and respondents arises over the interpretation of section 4, which is as follows:

"The following shall constitute employers subject to the provisions of this act within the meaning of the preceding section: (1) The state, and each county, city and county, city, town, village and school districts and all public corporations, every person, firm, and private corporation, (including any public service corporation) who has any person in service under any contract of hire, express or implied, oral or written, and who at or prior to the time of the accident to the employee for which compensation under this act may be claimed, shall, in the manner provided in the next section, have elected to become subject to the provisions of this act, and who shall not, at the time of such accident, have withdrawn such election, in the manner provided in the next section."

Petitioner insists that it was the intention of the legislature by this section not only to divide employers into two classes, but to commit the state to an election of "compensation" as the method of satisfying claims for injuries to its employees. He believes that the section should be read as if a semicolon were placed after the words "all public corporations" and that so punctuated the section would designate two classes of employers, (1) the state and the specified public corporations and (2) persons, firms and corporations having people in their service and further that all employers in the first group would come under the compensation provisions, while those in the second class would come within the terms of the act only by election.

As a preliminary reason for a reading of the act in such manner as to sustain his views, petitioner's counsel is at some pains to assure us that "the best modern judgment favors the theory of compensation" and "the state of California expects employers to elect compensation as preferable to liability." Even if we concede his first proposition we cannot be swayed to any great extent by it unless the legislative branch of our government has expressed similar views because legislation is not one of the functions of this court. If, however, the state has indicated a policy in favor of such election by employers, we should of course be bound to consider that fact in our efforts to interpret statutes having reference to employers other than the state itself, but the state's preference in that regard, even if for the purposes of argument we

admit its existence, would be of small value to us in constru-
ing the intention of the state, as expressed by the legislature,
where the subject involved is the attitude of the state when it
is itself an employer, because the sovereign is not bound at
all to compensate an individual employee for injuries sus-
tained while in its service, and no right of recovery in favor
of such employee exists except by statute. (*Bourn* v. *Hart*,
93 Cal. 321, [27 Am. St. Rep. 203, 15 L. R. A. 431, 28 Pac.
951] ; *Chapman* v. *State*, 104 Cal. 690, [43 Am. St. Rep. 158,
38 Pac. 457] ; *Melvin* v. *State*, 121 Cal. 16, [53 Pac. 416] ;
*Denning* v. *State*, 123 Cal. 316, [55 Pac. 1000].) ''Public
rights will not be treated as relinquished or conveyed away
by inference or legal construction. Statutes permitting the
state to be sued are in derogation of its sovereignty and will
be strictly construed.'' (Lewis's Sutherland Stat. Constr.,
sec. 558.) The statute before us must, therefore, be strictly
construed and in such manner, if possible, to preserve to the
state its nonliability for injuries to those in its service.

But petitioner calls our attention to two other sections of
the act which, as he believes, when read in connection with
section 4, compel the interpretation of that section which he
favors. Section 6 defines the term ''employee'' as '' (1) Every
person in the service of the state, or any county, city and
county, city, town, village or school district therein, and all
public corporations, under any appointment or contract of
hire, express or implied, oral or written, except any official of
the state, or of any county, city and county, city, town, village
or school district therein or any public corporation, who shall
have been elected or appointed for a regular term of one or
more years, or to complete the unexpired portion of any such
regular term. (2) Every person in the service of another
under any contract of hire, express or implied, oral or written,
. . . but not including any person whose employment is but
casual and not in the usual course of the trade, business,
profession or occupation of his employer.'' The above classifi-
cation, he says, is based not upon any difference or distinc-
tion in the employees themselves but solely upon the classifi-
cation of employers. Section 7 provides that: ''Any employee
as defined in subsection (1) of the preceding section shall be
subject to the provisions of this act and of any act amenda-
tory thereof. Any employee as defined in subsection (2) of

the preceding section shall be deemed to have accepted and shall . . . be subject to the provisions of this act. . . . if . . .

" (1). The employer . . . is subject to the provisions of this act, whether the employee has actual notice thereof or not; and

" (2). At the time of entering into his contract of hire, express or implied, with such employer, such employee shall not have given to his employer notice in writing that he elects not to be subject to the provisions of this act, or, in the event that such contract of hire was made in advance of such employer becoming subject to the provisions of the act, such employee shall, without giving such notice, remain in the service of such employer for thirty days after the employer has filed with said board an election to be subject to the terms of this act."

Petitioner's position then is this: Employees are classified by section 6 simply as those hired by the two kinds of employers—public and private. By section 7 the public employee is given no election, and, therefore, petitioner reasons, section 7 was based upon the conclusion that by section 4 the legislature had already elected for the state the system of compensation. That is, according to petitioner, the statute was intended to classify employers and employees, and to impose the provisions for compensation automatically upon public employers and those in their service, and to permit the privilege of election to private employees and employers. "The legislature," says counsel for petitioner, "could never have intended to mix this privilege of election—to allow election to both classes of employers and to only one class of employees." But we see no incongruity in a situation denying to public employees the right of election. The state by virtue of its sovereignty may refuse all redress to its injured servants. When it elects to adopt the compensatory system, that becomes the only recourse of the employee. His election is not between such recourse and a suit for damages, but between the privilege extended to him and resignation from public service. All who seek employment under the state must be willing to accept it, if at all, under such terms as are offered. Returning to a consideration of section 4: If we so separate the section that the modifying clauses each beginning with the word "who" are made to modify only the nouns following the words "public corporations," we take away from

the act its elective features so far as the state and the employees thereof are concerned and make it compulsory as to them. Such purpose on the part of the legislature is negatived by several circumstances. For example, we find the expression "who has any person in service under any contract of hire" in section 4. If petitioner is correct in his views these words apply only to the nouns "person," "firm" and private "corporation"; but we find essentially the same formula used twice in section 6—once in the definition of an employee of the state and again with respect to one who has been hired by a private person. Such use of the expression in the latter section would indicate that when it appeared in section 4 it was meant (as the punctuation would imply) to modify all of the preceding nouns. Another argument against petitioner's position is that the act contains no provisions for the payment of awards which might be in favor of an employee and against the state. Again it is noticeable that no machinery is supplied by the act whereby the services of the Industrial Accident Board may be invoked by the state. No officer is named as the proper functionary to receive service of notices mentioned in the act. None is authorized to represent the state in requesting examinations of employees or the hearing of any controversies. These omissions are significant. They indicate that the legislature did not regard the state as being bound by the act in its present form and therefore omitted to provide for those contingencies which would arise if, at sometime in the future, the state should elect to place itself within the terms of the act, and which could then be met by appropriate legislation. We are convinced that the legislature did not intend the reading of section 4 which petitioner would have us give to it.

Let the demurrer be sustained and the writ discharged.

Lorigan, J. concurred.

HENSHAW, J., concurring.—I concur. It is apparent that this statute raises a doubt whether or not it was contemplated by its framers that the state should be subject to its provisions. Under fundamental and familiar principles of construction of statutes such as this the existence of the doubt is the solution of the inquiry. Wherever such a doubt

does exist the construction favors the sovereign. The sovereign is not brought within the scope of its own laws unless the intent that this should be done is made plainly to appear. This general rule of construction favoring the sovereign in case of doubt is applied to grants by the state, to statutes of limitation, to rights of action, and, indeed, to all laws and contracts concerning which it may be thought that the state is included or is a party. If, in truth, the state desires to subject itself to the law here in question it could and should do so in language of clear and unmistakable import.

Sloss, J., and Shaw., J., concurred.