[Civ. No. 1630.    First Appellate District.—June 26, 1916.]

## MILTON T. U'REN, Respondent, v. STATE BOARD OF CONTROL et al., Appellants.

STATE CONSERVATION COMMISSION—COMPILATION OF LAWS—EMPLOYMENT OF ATTORNEY AT LAW—ASSENT OF ATTORNEY-GENERAL NOT REQUIRED.—The State Conservation Commission, under the provisions of the act creating such commission (Stats. 1911, p. 822), is not required to procure the assent of the attorney-general as provided by section 472 of the Political Code, as a condition to its employment of an attorney at law to compile the laws of the different nations, the federal government and the states of the Union affecting conservation, for the use of such commission, as such services are in the main clerical in character and possible of performance by other than a licensed attorney at law.

ID.—CLAIM FOR SALARY—MANDAMUS TO AUDIT DEMAND—FORM AND MANNER OF PRESENTATION.—In a proceeding in *mandamus* to compel the State Board of Control to audit and allow the claim of such attorney for his salary for a certain month, it cannot be urged in defense that the claim therefor was not presented in the form and manner provided by law, where the same was presented in the same form and manner in which the salary claims for previous months had been presented under the rules of the board and upon which it had acted approvingly.

ID.—EMPLOYEES OF COMMISSION—APPROVAL OF SALARY CLAIMS—POWERS OF STATE BOARD OF CONTROL.—Under the act creating the

State Conservation Commission and authorizing it to employ for the purposes for which the commission was created such' expert, technical, professional, and clerical assistants "upon such terms as it' may deem proper," and setting apart a specific fund for the payment of such obligations as the commission might thus create, the approval of a claim for such services by the commission is final, and the functions of the State Board of Control relative thereto are merely those of an auditing body, with no discretion or control over the amount for which the claim should be allowed.

ID.—AUDITING OF CLAIMS—MANDAMUS.—Where one official board or body is given authority by statute to create an obligation against a specific fund in the state treasury, and another official board or body is intrusted with the powers of an auditor in respect to claims generally against the state, the powers and duties of the latter in respect to such claims may be controlled by the courts and compelled by writs of mandate.

ID.—AUDITING OF CLAIM FOR SERVICES FOR COMMISSION—MANDAMUS—CONSENT OF STATE NOT REQUIRED.—The principle that the state cannot be sued without its consent has no application to a proceeding in *mandamus* to compel the State Board of Control to audit a claim for services rendered to the State Conservation Commission.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, Robert W. Harrison, Deputy Attorney-General, and Sullivan, Sullivan & Theo. J. Roche, for Appellants.

Fred. J. Goble, and U'Ren & Beard, for Respondent.

RICHARDS, J.—This is an appeal from a judgment ordering the issuance of a writ of mandate directed to the defendants, the State Board of Control, and also the members of said board, requiring them to audit and allow the claim of the plaintiff against the state treasury for the sum of two hundred dollars for his salary as an employee of the California State Conservation Commission for the month of July, 1912. Concerning the facts of the case there is no material dispute. The plaintiff, who is an attorney at law, was employed on or about July 1, 1911, by the California State Conservation Commission under the provisions of an act creating said commission (Stats. 1911, p. 822), by the terms of which it was au-

thorized to employ, for the purposes for which it was created, "such expert, technical, professional and clerical assistants, and upon such terms as it may deem proper." The particular service which the plaintiff was employed to perform was "to compile for the use of said State Conservation Commission the laws of the different nations, the federal government and the states of the Union affecting conservation generally." The plaintiff proceeded under such employment to do such work, and continued therein up to August 1, 1912. The salary claims for the intervening months up to July 1, 1912, were presented to and audited and approved by the board of control without objection, but when on July 30, 1912, his salary claim for July was presented in the same form and manner in which his salary claims for previous months had been presented and allowed, it was refused allowance by the board of control, which action on the part of said last-named board led to this application for a writ of mandate to the superior court, which upon hearing was directed to be issued, whereupon the defendants took and now prosecute this appeal.

There are two contentions of the appellants which may be disposed of upon the threshold. The first is that the plaintiff being an attorney at law, and the services being in the nature of legal services, he could not be legally employed by the conservation commission without first having obtained the written consent so to do from the attorney-general under the express provisions of section 472 of the Political Code, which consent was not in fact obtained. We are of the opinion that this section of the Political Code has no application to the case at bar nor to the plaintiff's employment. While it is true that the plaintiff was and is an attorney at law, and while it is true that the services which he was engaged to perform were of such a nature as might best be performed by one skilled in knowledge of the law, still they were not such services as were strictly professional in their nature or as only a licensed attorney at law could perform, but, on the contrary, were in the main clerical in character, which the plaintiff or anyone else with his ability could well have performed without the possession of the title or license of an attorney at law. This being so, we hold with plaintiff that compliance with section 472 of the Political Code was not a prerequisite to the plaintiff's employment.

The next contention of the appellant is that the claim of the plaintiff was properly rejected, for the reason that it was not presented in the form and manner provided by law. We find no merit in this contention, for the reasons that it is conceded that the claim was made out and verified and presented in the same form and method which had been pursued for several previous months under the rules of the state board of control and upon which it had theretofore acted approvingly. If in this instance such board intended to require a different form or method of verifying and presenting this particular claim, it should have based its rejection of it upon that ground, and permitted plaintiff to remedy whatever defects in form existed, and not having done this, it cannot be heard upon application for a writ of mandate to urge for the first time mere formal defects in the presentation of the plaintiff's claim.

This brings us to the main question involved in this appeal, which is as to the scope of the powers with which the board of control is invested in the matter of the allowance and rejection of claims on the state treasury in payment for services rendered to other boards and commissions of the state within the sphere of their respective functions, and for which they are by the several acts of their creation invested with the power to contract upon such terms as they may deem proper.

It is the contention of the appellant that its powers in this respect are absolute, and that with its discretion in the allowance or rejection of any claim against the state treasury the courts have not the right or power to interfere. We cannot give our support to this contention. The State Board of Control was created under the provisions of the act of 1911 embracing sections 654 to 691 of the Political Code (Stats. 1911, p. 590), which act repealed all prior statutes relating to the creation, powers, and duties of prior auditing and examining boards, of which the State Board of Control was to be the successor. The powers and duties of this board were more ample and varied under the act of their creation than those of prior commissions or boards exercising similar functions had been; but in the matter of its relation to the various kinds of claims upon the state treasury, these are classified, and the powers and duties of the board with respect to them are set forth in the following sections of the Political Code:

"Sec. 663. Claims against state. Every claim against the state for which an appropriation has been made or for which a state fund is available, must be presented to the board for its scrutiny before being paid. The board may for cause postpone action upon a claim for not exceeding one month.

"Sec. 664. Any person having a claim against the state for which an appropriation has been made, may present the same to the board in the form of an account or petition and the secretary of the board must date, number and file such claim. The board must allow or reject the same within thirty days. The concurrence of two members of the board shall be required to approve and allow any claim against the state in whole or in part."

"Sec. 667. If no appropriation has been made, or if no fund is available for the payment of any claim against the state, the settlement of which is provided by law, or if an appropriation or fund has been exhausted, such claim must be presented to the board which shall audit the same and if approved by at least a majority vote thereof it shall, with the sanction of the governor, be transmitted to the legislature with a brief statement of the reasons for such approval."

"Sec. 669. Any person having a claim against the state, the settlement of which is not otherwise provided for by law, must present the same to the board at least four months before the meeting of the legislature, accompanied by a statement showing the facts constituting the claim, verified in the same manner as complaints in civil actions. Before finally passing upon any such claim, notice of the time and place of hearing must be mailed to the claimant at least fifteen days prior to the date set for final action. At the time designated the board must proceed to examine and adjust such claims. It may hear evidence in support of or against them and, with the sanction of the governor, report to the legislature such facts and recommendations concerning them as may be proper. In making such recommendations the board may state and use any official or personal knowledge which any member thereof may have touching such claims."

An examination of these sections of the Political Code will show that there are two classes of claims which come within the purview of the State Board of Control. These are, first, claims for which an appropriation has been made or for which a state fund is available, and, second, claims for which no

appropriation has been made, or for which for any reason no fund is available. The claim in question in the instant case comes within the first of these classes. The plaintiff was employed by the California State Conservation Commission to do certain work within the scope of its functions and at the fixed monthly sum for salary, for which his claim was presented to the State Board of Control, the conservation commission having already approved said claim. The purposes for which the State Board of Control was created, and the powers with which it was invested, are, so far as may be discoverable from the terms of the statutes, in no very essential sense different from those governing the creation and defining the powers and duties of the state board of examiners, the final predecessor of the board of control. In the early case of *Lawrence* v. *Booth,* 46 Cal. 187, it was held that as to that class of claims against the state treasury of which the power of creation and propriety as to amount were matters intrusted to the discretion of other departments of the state government, the functions of the state board of examiners were merely those of an auditing body, with power to pass upon the regularity in form of the claim, but with no discretion nor control over the amount for which the claim should be allowed. In the comparatively recent case of *Sullivan* v. *Gage,* 145 Cal. 759, [79 Pac. 537], the case of *Lawrence* v. *Booth* was commented upon, and the distinction clearly drawn between those classes of claims with reference to which the validity of the action of the official, body, or board creating the obligation, or its amount, were not called into question, and those classes of claims wherein the validity of the order creating them was in controversy; and as to the former the views of the court in the case of *Lawrence* v. *Booth* were upheld.

In the instant case the power and authority of the conservation commission to employ the expert, professional, and clerical services of the plaintiff in the course of, and for the purpose of, carrying into effect the objects of its creation, has not been and cannot seriously be called into question. Having the power to enter into the contract of employment "upon such terms as it might deem proper" (Stats. 1911, p. 823), and having had set apart a specific fund in the state treasury for the payment of such obligations as it might thus create, it must follow that the approval of the plaintiff's claim as evidenced by the requisition of the conservation commission upon

the state treasury for the payment thereof constituted the final determination as to the validity and propriety of the obligation, and hence that the powers of the board of control in respect to said claim were limited to those of an auditing body passing only upon the sufficiency in form of the plaintiff's demand.

The doctrine is well settled in numerous cases that where one official, board, or body is given authority by statute to create an obligation against a specific fund in the state treasury, and another official, board, or body is intrusted with the powers of an auditor in respect to claims generally against the state, the powers and duties of the latter in respect to such claims may be controlled by the courts and compelled by writs of mandate. (*Lewis* v. *Colgan,* 115 Cal. 529, [47 Pac. 357]; *Scott* v. *Boyle,* 164 Cal. 321, [128 Pac. 941], and cases cited.)

In the closing brief of appellant it is earnestly and elaborately contended that since as a fundamental proposition the state cannot be sued without its consent, and since this action is in the nature of a suit to compel the payment of money to plaintiff by the state, that it cannot therefore be maintained. But to our minds this principle has no application to the instant case. This is not in form or substance an action against the state to determine a contested claim against its treasury. The state has already by the act of its legislature set apart a specific fund for the payment of such obligations as the conservation commission had power to create; and the state has also by legislative act invested said conservation commission with the express power to create this specific obligation through its employment of the plaintiff to assist in carrying into effect the objects of its existence. The state is thus in a position of having assented to this claim; and this is an action or proceeding merely to compel the official auditor in the form of the board of control to perform a duty expressly enjoined upon it by law.

We can perceive no reason why the action of the trial court was not proper in directing the issuance of the writ.

Judgment affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

'A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1916.