[L. A. No. 18249. In Bank. Aug. 3, 1942.]

COUNTY OF LOS ANGELES, Petitioner, v. HARRY B. RILEY, as State Controller, etc., et al., Respondents.

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and L. K. Vobayda, Deputy County Counsel, for Petitioner.

Earl Warren, Attorney General, and T. A. Westphal, Jr., and Lawrence S. Fletcher, Deputies Attorney General, for Respondents.

CURTIS, J.—This proceeding was instituted to compel by writ of mandate certain state officials in charge of the finances of the state, respondents herein, (a) to recalculate the credits to which, it is contended by petitioner, the County of Los Angeles is entitled to have credited to its account "upon each and every report of aid to needy children presented to the Respondents herein by said County of Los Angeles since Sep-

tember 13, 1939, and which said reports have been audited and allowed by the State Department of Social Welfare and the State Controller as proper cases of child aid; and that Respondents in the making of said recalculation shall first deduct from the total of all aid given in each individual case by the combined contribution of the state, the county and the federal government, the amount of aid granted in the particular case by the federal government, and shall then divide the remainder into thirds and shall allow to the County of Los Angeles as a credit to apply against the advances made to said county, pursuant to the provisions of subdivision (a) of section 1555 of the Welfare & Institutions Code, two-thirds of said remainder unless said two-thirds shall exceed the sum of $15, in which event the credit given to the County of Los Angeles shall be $15 and no more, and that Respondents having made said recalculation as aforesaid shall thereupon forthwith allow to the County of Los Angeles as a credit to apply against the advances made to said county, pursuant to the provisions of subdivision (a) of section 1555 of the Welfare & Institutions Code, the difference between the sums so recalculated as hereinbefore provided, and the sums which said Respondents have heretofore allowed to said county as a credit against said advances by the calculations which the Respondents have heretofore made; (b) That they hereafter calculate the credits to which the County of Los Angeles is entitled upon each and every report of aid to needy children presented to the Respondents herein, pursuant to the provisions of section 1556 of the Welfare & Institutions Code, by ultilizing the formula of calculation hereinbefore described in subdivision (a) of this prayer.''

The money provided for the support and aid of dependent or needy children in this state is derived from three different sources: the federal government, the state, and the county. That portion of said money derived from the federal government is provided in section 403 of the Social Security Act approved August 14, 1935, (49 U. S. Stats., p. 627), as amended in 1939, (53 U. S. Stats., p. 1380; 42 U. S. C. A. § 603). This section as amended in 1939, effective January 1, 1940, provides that the federal government will pay for each needy child who is the only child in one family, a sum equal to one-half of the aid granted, not to exceed, however, nine dollars for each calendar month; for each needy child in one family beyond the first child, one-half of the aid granted to

each said subsequent child, not to exceed, however, the sum of six dollars for each calendar month.

In our discussion of the questions herein involved we will consider only the case where there is but one needy child in a family. The case of a subsequent child or children would be governed by the same rule, but, of course, the amounts to be paid by the federal government would be proportionately less, or two-thirds of that paid the first needy child in a family.

The support of needy children in this state by the state and several counties is governed by the provisions of the Welfare and Institutions Code (Stats. of 1937, Chap. 369), as amended in 1939 (Stats. of 1939, Chap. 302). It is agreed by each of the parties, however, that the proper solution of the problem before us involves the correct construction of section 1554 of the Welfare and Institutions Code. Respondents, however, suggest that this section must be construed in connection with other sections of said code, and particularly in connection with sections 1510, 1511, 1553 thereof. In line with this suggestion we will set forth the applicable provisions of these four sections with the purpose of construing section 1554 in the light of the other three sections.

By section 1510 "there is . . . provided . . . for the support and maintenance of needy children and to each county maintaining such needy children, aid not in excess of" fifteen dollars per month for each such needy child residing in said county.

By section 1511, as amended, it is provided: "For each needy child . . . there shall be paid the sum of twenty-two dollars and fifty cents per month, or so much thereof as is necessary for the adequate care of the child. The state shall pay 66⅔ per cent and the county shall pay 33⅓ per cent of the aid furnished for the adequate care of any needy child who has a county residence, but the state shall not pay more than fifteen dollars per month for any needy child who has such county residence.

"Any county may pay from its own funds additional sums for the care of any needy child, and the state and county may pay such aid as is needed for the adequate care of the family from other state or county funds."

Section 1553 provides, in part as follows: "During such time as grants in aid are made available by the United States Government for aid to dependent children in this state, and accepted by this state, the state treasurer, shall, from the

sums so granted, pay to each county (a) an amount which shall be used exclusively as aid to dependent children, equal to that proportion specified by the United States Government in so granting or making the sums available, not counting so much of such expenditure with respect to any child for any month as exceeds the maximum fixed by the United States Government in granting or making such sums available . . .''

Section 1554, as amended, insofar as it relates to the question before us, reads as follows: ''From the sums appropriated in section 1510 of this code, the state treasurer shall pay to the county, for each child to whom aid is given under the provisions of this chapter, an amount not to exceed the amount appropriated for each child in section 1510 of this code. The amount to be paid by the state treasurer for any needy child shall be computed as follows:

''(a) For each child who has residence in the state as defined by section 1525 and residence in the county as defined by section 1526 of this code, the amount granted by the United States Government and paid by the State Treasurer under the provisions of subdivision (a) of section 1553 for such child shall be deducted from the total amount granted for the child pursuant to section 1511 of this code, and two-thirds of the remaining sums shall be paid to the county by the State Treasurer. In no event shall this amount exceed the amount appropriated for a needy child by subdivision (a) of section 1510 of this code.''

Taking up the first sentence of section 1554, we find it refers to section 1510 in the following language: ''From the sums appropriated in section 1510 of this code, the State Treasurer shall pay to the county, for each [needy] child to whom aid is given under the provisions of this chapter, an amount not to exceed the amount appropriated for each child in section 1510 of this code.'' By section 1510 there is provided out of money in the state treasury for the support of and maintenance of three separate classes of needy children, not in excess of the several amounts stated therein. We are concerned only with the first class, that is, those children whose residence in the state and county entitle them to support both from the state and the county. For this class of needy children the maximum amount provided by section 1510 is fifteen dollars per month. Accordingly, the first sentence of section 1554 quoted above authorizes the payment by the state to the county for each such needy child a sum not

exceeding fifteen dollars per month. Section 1554 then provides for the method of computing the amount to be paid by the state treasurer for any such needy child as follows: For each such needy child whose residence entitles it to receive both state and county aid "the amount granted by the United States Government and paid by the state treasurer under the provisions of subdivision (a) of section 1553 for such child shall be deducted from the total amount granted for the child pursuant to section 1511 of this code, and two-thirds of the remaining sums shall be paid to the county" not exceeding the sum of fifteen dollars per month. In all cases in which there is any dispute between the county and state involved in this proceeding, this maximum amount of nine dollars federal money is conceded to be the proper amount to "be deducted from the total amount granted for the child pursuant to section 1511 of this code." The problem, therefore, before us is narrowed down to the determination of "the total amount granted for the child pursuant to section 1511 of this code," from which amount the nine dollars federal money is deducted, and two-thirds of the remaining sum shall be paid to the county by the state treasurer, not exceeding the sum of fifteen dollars per month.

The state contends that the total amount granted for the child is the sum of twenty-two dollars and fifty cents, as specified in the first paragraph of section 1511, while the county contends that in addition to the sum of twenty-two dollars and fifty cents, there is included the further sum which "any county may pay from its own funds additional for the care of any needy child," provided that the state in no event shall pay more than fifteen dollars per month for such support.

Let us first consider the contention of the state. If the sum of twenty-two dollars and fifty cents is the total amount granted for the child pursuant to section 1511, then by deducting from this amount the nine dollars federal money, there would remain thirteen dollars and fifty cents, two-thirds of which would be nine dollars or the state's proportion, the county paying the remaining one-third or four dollars and fifty cents. Under this construction of the section the state would never be called upon to pay more than nine dollars for the support of such needy child. If this is the correct construction of the section, why did the legislature provide therein that "the state shall not pay any more than fifteen dollars per month for any needy child who has

such county residence''?  If the maximum amount that the state is required to pay is only nine dollars per month, what was the object of stating that it should never exceed fifteen dollars per month? Furthermore, what purpose would there be in appropriating fifteen dollars per month for the support of a needy child in one section of this code, and in another limiting the amount that may be expended for that purpose to nine dollars per month? The only explanation the state makes to this unusual condition is that the federal aid is not granted to needy children cared for in private institutions, and aid for such children falls entirely on the state and county, and when the sum of twenty-two dollars and fifty cents, the maximum amount granted for aid to needy children, is given to children cared for in private institutions, said sum is divided between the state and county on the basis of two-thirds or fifteen dollars to be borne by the state and one-third or seven dollars and fifty cents to be borne by the county.

Section 1554, which, it is agreed by each party to this action, determines and fixes the maximum amounts to be paid by the state and county, respectively, for aid of needy children, requires that from the total amount of aid granted there shall be deducted the amount granted by the United States Government, and after specifying the several amounts which the state and county shall contribute, it expressly provides that in no event shall the amount paid by the county exceed the sum of fifteen dollars per month, provided for by section 1510.  Returning to section 1511, from the discussion of which we digressed to make the above reference to section 1554, there is the same limitation upon the amount the state may contribute in section 1511, as just noted in section 1554, that is, a maximum amount of fifteen dollars per month.

It appears, therefore, that the Legislature expressly appropriates the sum of fifteen dollars per month in section 1510 for aid rendered to needy children possessing the required state and county residence; and just as positively in sections 1511 and 1554 limits such aid to the maximum amount of fifteen dollars per month for each such child. In the face of the positive provisions of these sections the state contends that the said sum of fifteen dollars per month can only be paid for aid rendered to that limited class of needy children main-

tained in private institutions and in whose support the federal government does not participate. We are unable to agree with this contention, as such a construction of these sections of the code seems unreasonable and not sustained by the various express provisions thereof set forth above.

The county, on the other hand, contends that the words "from the total amount granted for the child pursuant to section 1511," as found in section 1554, include not only the twenty-two dollars and fifty cents mentioned in the first paragraph of section 1511, but such additional sums as the county may pay from its own funds for the support of a needy child as authorized in the second paragraph of said section, provided that "the state shall not pay more than fifteen dollars per month for any needy child." When construing section 1511 as a whole, as it is our duty to do, we think the position of the county must be sustained. As stated before, if we take the amount of twenty-two dollars and fifty cents as "the total amount granted for the child pursuant to section 1511," the state can never be called upon to pay more than nine dollars per month. If the state can be called upon to pay only nine dollars per month, as provided in the first sentence of the first paragraph of this section, why the necessity in the second sentence of this paragraph of placing a limitation of fifteen dollars per month on the state's share of this expense? This maximum amount of fifteen dollars which the state is authorized to pay can only arise when the cost of maintenance exceeds the sum of twenty-two dollars and fifty cents, and the requirement thereof that the state should not pay more than fifteen dollars per month for the support of a needy child is inconsistent with the construction which the state places upon the preceding provision fixing the maximum amount the state is required to pay at nine dollars per month. Such a construction, which fixes said maximum amount at nine dollars, would be inconsistent with the provisions of section 1510, by the terms of which the state has appropriated fifteen dollars per month for the support of needy children having the proper state and county residence.

Another consideration which not only supports the conclusion just stated, but which renders such conclusion practically conclusive is the exact wording of section 1554. It will be noted that this section expressly states that the amount granted by the United States Government is first to be deducted from "the total amount granted pursuant to section 1511 of this code." There is no dispute but that by the first

paragraph of section 1511 the state and county are granted authority to contribute toward said support the sum of twenty-two dollars and fifty cents, mentioned in the first paragraph of said section. It is equally clear that by the second paragraph of said section the county is given authority to pay from its own funds additional sums for the care of any needy child. So far as we are informed this is the only law of this state which authorizes a county to contribute to the support of such a needy child. Therefore, these "additional sums" are granted by the county pursuant to section 1511; so that not only the sum of twenty-two dollars and fifty cents provided for in the first paragraph of said section is granted pursuant to section 1511, but the additional sums provided for in the second paragraph of said section which a county may pay from its own funds also are granted pursuant to section 1511. These two amounts must be combined for the purpose of determining the "total amount granted pursuant to section 1511," and this total amount less the nine dollars contributed by the United States Government must be paid by the state and county in the proportion set forth in section 1554 provided the county shall not pay more than fifteen dollars per month for the support of such needy child. In our opinion the words fixing "the total amount granted pursuant to section 1511" can be given no other construction. We are, therefore, of the conclusion that by following the construction contended for by the county we obtain the correct formula to determine the respective amounts which the state and county must pay for aid rendered to such needy children.

It is argued that the total amount contributed by the county under section 1511 cannot be included in the computation contemplated by section 1554 for the reason that section 1511 designates appropriations made by a county "from its own funds." If the total amount of such appropriations were included in the base the county would be reimbursed by the state to the extent of ⅔ and the appropriation could not therefore be said to be out of its own funds. Section 1554, however, in fixing the proportion that state and county shall ultimately bear and in providing the base figure, i. e., total amount under 1511, necessarily contemplates that the county is to be reimbursed to the extent authorized by section 1554 for amounts that it has advanced out of its own funds.

The present proceeding, as we have seen, is one in mandamus to compel the respondents, officers of the state, to recal-

culate the credits to which petitioner alleges the county of Los Angeles is entitled, upon certain reports of aid to needy children, and thereupon to allow the county of Los Angeles a credit equal to the difference between the sums so recalculated and those previously calculated by respondents, and that the respondents hereafter calculate the credits to which petitioner contends the county is entitled upon like reports which may in the future be made by the petitioner to respondents, by using the county formula hereinbefore referred to. It is the contention of respondents that the present proceeding in mandate will not lie for the reason that the obligation of the state to pay the county for the maintenance of needy children under the provisions of the Welfare and Institutions Code is in the nature of a contract, that under the provisions of section 688 of the Political Code the county is given the right to sue the state upon said contract, and that the petitioner is barred from maintaining this action to recover the sums claimed to be due prior to the filing of this action by its failure to present any claim for said sums to the State Board of Control, as required by section 688 of the Political Code.

By reference to section 688 it will be seen that it is provided therein, among other things, that any person having a claim on an express contract must present the claim to the State Board of Control, and on its disallowance by the Board of Control the person is given authority to bring suit against the state on such claim. It is conceded that the petitioner has not presented any claim to the Board of Control for any money claimed to be due it from the state on account of aid furnished to needy children as set forth in its petition herein.

In support of their contention just stated, respondents rely upon the case of *County of San Luis Obispo* v. *Gage,* 139 Cal. 398 [73 Pac. 174]. That action was instituted by the county of San Luis Obispo against the State Board of Examiners to obtain a writ of mandate compelling the board to allow and approve certain claims in favor of the county against the state for money alleged to have been expended by the county for the maintenance of orphans, half-orphans, and abandoned children, residents of the county, under the provisions of an act of the Legislature of date March 25, 1880. (Stats. 1880, p. 13.) It was held in that action that a claim against the state for the maintenance of orphans, half-orphans, etc., under said act is a claim resting upon contract within the meaning of the act of 1893 (Stats. 1893, p. 57), and no action could be maintained on said claim unless it was presented to the

Board of Examiners (the predecessor of the present Board of Control), as provided in said act. From this statement of that case respondents contend that the petitioner had an adequate remedy at law for the recovery of any amounts due it and therefore mandamus will not lie to compel the respondents to perform the duties which the petitioner alleges they are required by law to perform.

The act of 1893 permitted any person who had a claim on contract or for negligence against the state to bring suit thereon against the state. The authority to sue the state is now found in section 688 of the Political Code which provides that "Any person who has . . . a claim on *express* contract or for negligence against the State . . . is hereby authorized . . . to bring suit against the State on such claim." (Italics ours.) It will be noted that under the present statute the right to sue the state on a contract is limited to *express* contracts. The obligation of the state to reimburse counties for aid furnished by the latter to needy children is imposed by statute. Statutes authorizing persons to sue the state being in derogation of sovereignty are strictly construed. (23 Cal. Jur. 578; *Miller* v. *Pillsbury*, 164 Cal. 199, [128 Pac. 327; Ann. Cas. 1914B, 886]; *State of California* v. *Royal Consolidated Mining Co.*, 187 Cal. 343 [202 Pac. 133].) It follows therefore that petitioner is not given permission by section 688 of the Political Code to bring suit on its present claim against the state. Accordingly, it is without legal remedy to enforce its claim. It may therefore resort to this statutory remedy of mandamus to compel the respondents as officials of the state to perform the duties enjoined upon them by law. The rule is well established in this state that where the action is one simply to compel an officer to perform a duty expressly enjoined upon him by law, it may not be considered a suit against the state. (23 Cal. Jur. 583; *Board of Directors* v. *Nye*, 8 Cal. App. 527 [97 Pac. 208]; *Kingsbury* v. *Nye*, 9 Cal. App. 574 [99 Pac. 985]; *U'Ren* v. *State Board of Control*, 31 Cal. App. 6 [159 Pac. 615].) As the present action is not one against the state, the provision of section 688 of the Political Code, requiring the presentation of a claim to the Board of Control as a prerequisite to the institution of suit, has no application to actions of this character. The action was properly commenced and petitioner has the legal right to maintain the same.

For the reasons stated above, we are of the opinion that

the writ prayed for herein should issue. It is therefore ordered that a writ of mandate issue out of this court directed to the respondents as prayed for by petitioner.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J., Dissenting.—Although I agree with the mathematical result reached in the opinion of my associates, I cannot concur in their construction of the applicable sections of the Welfare & Institutions Code.

By section 1510, there is provided, out of money in the state treasury not otherwise appropriated, to each county maintaining needy children aid not in excess of $15 per month. The next section fixes the amount of the total aid at $22.50 per month "or so much thereof as is necessary for the adequate care of the child," of which the state shall pay two-thirds and the county one-third, the maximum liability of the state being $15 per month. But under this section "any county may pay from its own funds additional sums for the care of any needy child."

Although before 1937 the state had reimbursed the counties for part of the amount expended by them in the care of needy children, the present plan for supporting these persons was adopted in 1937 when the Welfare & Institutions Code was enacted. Unquestionably, in fixing the amount to be appropriated, the Legislature took into consideration the then and present policy of the federal government, for section 1553 provides that "During such time as grants in aid are made available by the United States Government" the state treasurer shall pay to each county the specified amount "which shall be used exclusively as aid to dependent children." And the next section carries the amount of the federal aid into the formula by which the state's proportion of the total cost shall be determined. First, the amount of federal aid "shall be deducted from the total amount granted for the child pursuant to section 1511 . . . and two-thirds of the remaining sums (not in excess of $15 per month) shall be paid to the county by the state treasurer.

Under these provisions, as I read them, the aid for dependent children is made up of money appropriated by the federal government, the state, and the county in specified amounts, and, insofar as aid over a total of $22.50 per month is concerned, in determining the amount which the county

shall contribute, it is necessary to determine how much of that excess it has paid "from its own funds." Under the construction adopted by my associates, in the event that the county paid a total of $36 per month "for the adequate care of the child" or $13.50 more than the basic amount of $22.50, in making its settlement the state would first deduct the federal aid of $9 per month at the present rate. But as two-thirds of the remainder, $27, amounts to more than $15, the state's proportion would be limited to that amount. The result would be that the county had added $13.50 to the $22.50 base aid but eventually had to pay only $12 of that amount.

A more logical construction, it seems to me, is to say that the federal aid is never a part of the county's "own funds," but that it is a component part of the total aid given to the dependent child. On this basis, and using the same example, the county, with the knowledge that it will receive $9 of federal aid for each dependent child, decides that it will use that amount and $4.50 of its own funds to make up $36 for "adequate care." The state would pay to the county the $9 of federal aid and its own proportion of $15. The balance, or $12, represents the county's proportion of $7.50 of the basic aid of $22.50, plus the additional $4.50 which it has paid "from its own funds." This construction harmonizes the language found in each pertinent section of the code.

But if the obligation of the state to reimburse counties for aid furnished by the latter is an implied contract, then the writ should require the respondents to recalculate the petitioner's accounts for the period of two years prior to the commencement of this proceeding. (Code Civ. Proc. § 339.)

The nature of the right asserted in a mandamus proceeding determines which statutory provision, in regard to limitation of actions, applies. (*Dillon* v. *Board of Pension Commrs.,* 18 Cal. (2d) 427 [116 P. (2d) 37, 136 A. L. R. 800].)

Respondents' petition for a rehearing was denied September 2, 1942. Edmonds, J., voted for a rehearing.