[Civ. No. 12888. Third Dist. Dec. 17, 1971.]

COUNTY OF MENDOCINO, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Duncan M. James, District Attorney, and Burgess Williams, Deputy District Attorney, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Paul Joseph and J. M. Sanderson, Deputy Attorneys General, for Defendant and Respondent.

OPINION

PIERCE, J.*—This is a pleading case. Plaintiff brought an action against the State of California, acting through various state officers, including the State Controller. There were two amended complaints. All of the amendments principally involved allegations regarding the late filing of a claim with the State Board of Control and the sufficiency of that claim. The claim related to work by the county characterized as "emergency flood relief work" (to county roads). (Also involved was a question of promissory estoppel, which we will not reach, arising from alleged promises by certain state agents that the state would reimburse the county for the cost of such work. On that question see, however, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, §§ 172-173.)

A demurrer was sustained to the second amended complaint without leave to amend. Judgment for defendant followed. Plaintiff appeals.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

This court, after reviewing the file and the relevant statutes, is of the opinion that the parties and the trial court mistook the true nature of the proceedings. For reasons which we will explain, the general claims statute is inapplicable. Although not denominated as such, the complaint herein is in the nature of an application for mandamus. Special statutory provisions apply, not the general claims statute. The claim should be heard on its merits.

### Allegations of the Complaint.

We summarize the allegations of the second amended complaint material to the issues. Plaintiff, County of Mendocino, is a political subdivision, thus a public agency of the State of California. The state and the State Controller are named defendants.

On December 24, 1964, the President of the United States and the Governor of the State of California officially declared the County of Mendocino a disaster area due to flood and storm damage. Highways were among the public works damaged.

On August 24, 1965, the state, acting through the Department of Public Works, entered into what was declared to be a contract with the County of Mendocino as the "Local Agency." It was entered into under the "Emergency Flood Relief Law." (Gov. Code, §§ 54150-54164.[1]) The county had applied to the State Allocation Board for assistance in meeting the costs to repair the storm and flood damage which occurred during a "disaster" recited, to wit, the 1964-1965 flood. The department had investigated the work regarding which the county had sought assistance; it had filed a report and the state Director of Finance had approved that report. The work approved had included the repair and restoration of specified county roads. Each item of this work is enumerated in great detail with estimated costs. With regard to each unit of work, the part of the costs which would be paid by the federal government under contributions to be allocated between the state or its agencies on the one hand and federal government on the other are specified. Total specificity was also set forth regarding the portion of the costs to be borne by "local agency" (i.e., county) funds. The computation was stated to have been so made under a formula set forth in the Emergency Flood Relief Law. It was contemplated that the state contributions were to be administered by warrants drawn by the State Controller payable from the state treasury. The agreement referred to "General Provisions of Storm and Flood Damage Agreements." These provisions derived from the law,

---

[1]All code references herein are to the Government Code unless otherwise noted.

fixed by regulation, and incorporated in the "contract" and made a part thereof, contained within their own framework a complete procedural scheme for the submission of plans, the allocation of state funds, readjustment of payments and a built-in scheme for the submission of claims allocation, division and payment to local agencies of amounts due. The general provisions contain this clause: "The Agreement shall be of no force or effect unless State funds as are specified in the agreement are allocated."

Further allegations in the complaint indicate that while there had been differences between the state and the county as to the amounts which were properly payable to the latter, there was no disagreement that the county was performing work within the provisions of the Emergency Flood Relief Law. Work was 96 percent completed by June 30, 1966, under a certain "Item No. 45." The amount then being demanded by the county was $64,533.55. The time schedule thereafter was: On July 9, 1966, disallowance of a part of the work; on February 8, 1968, an audit made of the county's expenditures and the claim disapproved. Negotiations, however, are alleged to have continued until June 12, 1969. On that date the county received a letter from the state finally denying the claim for "Item No. 45." Actually, final claim denial must have been anticipated. The original complaint herein was filed July 1, 1969. The amount then claimed by the county was $59,215.59 with interest.

### The Emergency Flood Relief Law, Not the General Claims Statute, Was Applicable.

The 1959 Legislature enacted a statute for the benefit of local agencies (expressly including counties). It provides, inter alia, for the repair and restoration of county roads damaged or destroyed by storms or floods in instances where an appropriation has been made for that purpose. It is called the "Emergency Flood Relief Law." (Stats. 1959, ch. 1511, § § 54150-54164.)

Several departments of the state, including the Department of Public Works, are named as agencies to administer the provisions of the law. (§ 54153.) The Department of Finance allocates appropriated funds, and it is provided that allocations will be so made that matching or contributing federal funds can be obtained by the "local agency." (§ 54155.)

Following is the procedure: First, one of the named departments investigates and reports, determining that there is a state interest in specified work; the local agency then applies to the Department of Finance for allocation of funds, an agreement is executed between the state department affected (e.g., the Department of Public Works) and the local agency

(here the county); methods of handling funds and the criteria for fixing the allocation of costs (between the state, acting through the appropriate agency, and local agency) are made. Provision is also made for exercise of such controls that contributing federal funds may be obtained. (§§ 54157, 54158.)

Sometimes the remodeling of a flood-damaged facility rather than its repair may be undertaken. When that is done, contributions from the state are provided only for that portion of the cost of the work which constitutes repair of damage. (§ 54159.)

*The act contains its own claims statute within its terms.* The claim of the local agency for the cost of flood damage repair it has incurred is presented to the State Controller for payment only after it has been processed by one of the specified state departments having jurisdiction. (Here, it was processed by the Department of Public Works, by the Director of Finance, and by the Department of Public Works again.) The State Controller then makes an audit to determine whether the expenditures fall within the provisions of the act. No period is stated within which such a claim must be processed. (§ 54164.) The act is a complete statutory scheme for state contribution to local agency expenditures for flood damage repair in local disaster cases.

The general claims statute (Stats. 1963, ch. 1715, amended in 1965, Stats. 1965, ch. 653, § 910 et seq.) is an aftermath of the *Muskopf* case (*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457]). It was intended, hopefully, to correlate in one statute most (but, as we shall see, not all) notice-of-claim requirements where the state or any other public entity was being sued. Generally speaking, the new claims statute applies to actions in torts, contracts and other actions where the state (or agency) is being sued to enforce a constitutional obligation (e.g., inverse condemnation). It is important to remember the purposes of claims statutes. The purposes are twofold: "(a) the entity [to be charged] should have an opportunity to investigate promptly while the evidence and witnesses are available; (b) the entity, having obtained full information, should have an opportunity to settle meritorious claims without litigation." (See, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 145 et. seq., p. 1010, and authorities cited.)

Before 1959, claims requirements were set forth in a maze of statutes applying to different agencies with varying requirements relating to time of filing, place of filing, form and content. They were described as "traps for the unwary." In 1959 the California Law Revision Commission undertook a comprehensive draft and the 1959 Legislature enacted extensive revision in the form of a general claims act. Despite improvements, it

was deemed still to be defective, and in 1963 a new act was adopted. This, with minor amendments (cited above), is still in effect.

Section 905.4 should be quoted in full. It states: "Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part shall not be construed to be an exclusive means for presenting claims to the Legislature *nor as preventing the Legislature from making such appropriations as it deems proper for the payment of claims against the State which have not been submitted to the board* [*of control*] *or recommended for payment by it pursuant to Chapters 1 and 2 of this part.*" (Italics ours.)

We deem the Emergency Flood Relief Law outlined above to be within the purview of section 905.4. Indeed, presentation to the board of control of a claim provided by the general claims act with the investigations and controls therein contained would be merely duplicative of the work performed by appropriate administrative state agencies. This would be wasteful, costly, unnecessary, and in some instances could result in a bewildering conflict between several departments of state government differing with each other and without any benefit to the public.

■ If we had here a proceeding brought *in form* as an application for a writ of mandamus (or any other writ), there could be no question about the result of this appeal. In *County of Los Angeles* v. *State Dept. Pub. Health* (1958) 158 Cal.App.2d 425 [322 P.2d 968] (hg. den.), a conflict arose between the county and the State Department of Public Health over the allocation of funds under the Tuberculosis Subsidy Law. The state government and counties each paid for hospitalization of tubercular patients, the facilities being maintained by the counties. The proceeding was brought by the county by application for a writ of mandamus. No compliance with the then applicable claims statute preceded the filing of the application. On the authority of an earlier decision of our Supreme Court in *County of Los Angeles* v. *Riley* (1942) 20 Cal.2d 652 [128 P.2d 537], it was held that neither an action at law nor the filing of a claim was required. In *Riley* the county had sought a writ of mandate to compel respondents to recalculate credits to which the county believed it was entitled based upon reports of aid to needy children over a specified period. The amounts contained in the reports had been audited by the State Department of Social Welfare and there, as here, the amounts to be paid the county had been calculated in accordance with a specific formula by which the amounts paid for such aid were to be divided among the federal government, the state and the county. There, as in *County of Los Angeles* v. *State Dept. Pub. Health, supra,* and here, the Attorney General contended that an action should have been brought and that the

claims statute then applicable should have been complied with. The Supreme Court stated (on p. 662): ". . . where the action is one simply to compel an officer to perform a duty expressly enjoined upon him by law, it may not be considered a suit against the state. [Citations.]"

### The Importance of the Label.

As the factual statement above has shown, if these proceedings had been labeled a petition for writ of mandate, the instant case would be indistinguishable from *County of Los Angeles* v. *State Department of Public Health.* The action was not so labeled. Mislabeling should not be important enough to cause a proper segment of the taxpaying public to receive a lesser tax credit while another segment escapes paying its fair share.

Every fact necessary to advise the parties and the court was alleged in the pleading filed. The "complaint" alleged the payment of the funds appropriated for emergency disaster flood repair from the state to the county, an act which the law specially enjoined as a duty arising from office upon the defendants and, heaven knows, there was no plain or speedy or adequate remedy in the ordinary course of law. Or, so it was alleged.

As early as 1951 our Supreme Court stated in *Boren* v. *State Personnel Board,* 37 Cal.2d 634, at page 638 [234 P.2d 981]: "As against a general demurrer, however, it is unimportant that plaintiff's pleading was not in form a petition for mandamus or certiorari. All that is required is that plaintiff state facts entitling him to some type of relief, and if a cause of action for mandamus or certiorari has been stated, the general demurrer should have been overruled. [Citations.]" (See also *Salsbery* v. *Ritter* (1957) 48 Cal.2d 1, 7 [306 P.2d 897]; *Merco Constr. Engineers, Inc.* v. *Los Angeles Unified Sch. Dist.* (1969) 274 Cal.App.2d 154, 169 [79 Cal.Rptr. 23].)

Here a cause of action in mandamus has been stated under the definition of mandamus in Code of Civil Procedure section 1085.

This court in *Northridge etc. Water Dist.* v. *McDonell* (1958) 158 Cal. App.2d 123, 126 [322 P.2d 25], has held that a cause of action under an agreed statement of facts pursuant to Code of Civil Procedure section 1138, which would fall within the definition of mandamus, would be effective as an application for a writ of mandamus.

Both the constitutional revision of 1966 (Cal. Const., art. VI, § 10) and many appellate court cases antedating it (5 Witkin, Cal. Procedure (2d ed. 1971) § 183, p. 3942 et seq.) have broadened procedural jurisdiction in extraordinary writ proceedings and have liberally tolerated mis-

takes. This has occurred in proceedings in which the state's adversary was an individual. As this court views it, liberality of interpretation should be even greater in a proceeding such as this one.

The county is a political subdivision of a state which is one of the United States. We, the people, in order to form a more perfect union, created, inter alia, the three divisions of government—federal, state and county. We are citizens of all three; we are also taxpayers of all three.

When certain legitimate objectives of government are to be accomplished, we, the people, acting through our representatives, the Congress or the Legislature, or both, have conceived that the costs of these objectives should be apportioned. Care of needy children (as in *County of Los Angeles* v. *Riley, supra*), care of tubercular patients (as in *County of Los Angeles* v. *State Dept. Pub. Health, supra*), and—as we rule in the case at bench—the cost of repairing local disaster flood damages to roads and other public property, all fall within the category of such apportionment. As our representatives in Congress and the Legislature presently conceive it, different levels of the populations should bear such costs in different proportions based upon formulas roughly calculated to the end that those closest to, and most affected by, the particular problem should bear the largest proportion.

That homily illustrates what we deem to be a conceptual difference within the scope of the problems we confront in this case. There is a vast difference in kind between representatives of the taxpaying public at different levels who litigate their controversies *inter sese,* on the one hand, and private individuals who litigate among themselves or with any one of our divisions of sovereignty (the United States, the state, the county or any other public agency—statewide or local), on the other hand.

We need not define those differences in these proceedings further than to assert that we rule here that the claims statute embodied in section 900 et seq. is inapplicable to this adversary proceeding between the county and the state to determine whether the people of Mendocino County have received payment of their fair share of relief money to which they are entitled under the Emergency Flood Relief Law.

Of course, as we stated at the outset, the county's allegations have not been and may not be proved.

Judgment reversed.

Friedman, Acting P. J., and Janes, J., concurred.