[No. D017909. Fourth Dist., Div. One. July 12, 1994.]

RHONDA HILL, Plaintiff and Appellant, v.
GEAN NEWKIRK, Defendant and Respondent.

**COUNSEL**

Raymond M. Vecchio and Steven L. Merker for Plaintiff and Appellant.

David D. Ribeiro and Diane R. King for Defendant and Respondent.

**OPINION**

**NARES, J.**—Plaintiff Rhonda Hill's infant daughter Amber tragically died while in the care of Amber's foster mother, defendant Gean Newkirk. Hill

brought a negligence action against Newkirk. The court sustained Newkirk's demurrer without leave to amend on the ground that Hill failed to first file a claim with the Foster Family Home and Small Family Home Insurance Fund (Fund) as required by Health and Safety Code[1] section 1527.6, subdivision (d).[2] We affirm the judgment.

### PROCEDURAL AND FACTUAL BACKGROUND

In reviewing the trial court's judgment sustaining a demurrer without leave to amend, we accept as true all properly pleaded allegations stated in Hill's second amended complaint. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].)

Amber was born on April 9, 1989, with severe respiratory problems. She was thereafter placed with Newkirk, a foster parent licensed to care for medically fragile children. According to the second amended complaint, Amber's "fragile health . . . required that [she] be at all times attached to an Apnea monitor in order to detect the existence or condition of [her] breathing. On [August 9, 1989] . . . Newkirk [] detached [Amber's] Apnea monitor . . . and left the minor unsupervised. Soon thereafter, [Amber] stopped breathing and died." Newkirk's conduct was the alleged cause of Amber's death.

Eleven months later, Hill filed an administrative claim with the County of San Diego (County) pursuant to the California Tort Claims Act.[3] (Gov. Code, § 905 et seq.) The County rejected Hill's claim as untimely because it was beyond the six months' limitations period for filing such claim. (Gov. Code, § 911.2.) The court later denied Hill's petition for relief from filing a late claim. (Gov. Code, § 946.6.)

On August 7, 1990, Hill filed a separate negligence suit against Newkirk. Four months before trial was scheduled to begin, Newkirk moved for judgment on the pleadings, contending Hill failed to state a cause of action

---

[1] All subsequent statutory references are to the Health and Safety Code unless otherwise specified.

[2] Section 1527.6, subdivision (d) provides: "No person may bring a civil action against a foster parent for which the [F]und is liable unless that person has first filed a claim against the [F]und and the claim has been rejected, or the claim has been filed, approved, and paid, and damages in excess of the payment are claimed."

[3] In the claim, Hill asserted that "Foster parent . . . Newkirk negligently and wrongfully removed the Apnea Monitor from Amber . . . . Newkirk also failed to monitor the child's condition. The Department of Social Services failed to insure that the minor child was placed in a safe and secure environment, and failed to insure that the foster parents were qualified to care for a child on the Apnea Monitor. [Amber's appointed attorney] failed to properly monitor the condition and placement of the minor child that she was appointed to represent."

because she did not file a claim with the Fund as required by section 1527.6. The trial court granted Newkirk's motion and granted Hill leave to amend.

Hill's second amended complaint alleged the County was the "acting contracting agency" for the state and as such, her claim filed with the County was sufficient to fulfill the claim filing prerequisite of section 1527.6.[4] The trial court sustained Newkirk's demurrer without leave to amend, stating Hill could not plead around her failure to file a claim with the Fund as required by section 1527.6. This appeal ensued.

DISCUSSION

I.

*Section 1527.6 Applies to Hill's Negligence Claim*

 Hill contends her claim against Newkirk was not subject to section 1527.6's claim notice requirement.

In 1986, the Legislature established the Fund to address the growing insurance crisis in the state's foster care system. (§ 1527.1; Stats. 1986, ch. 1330, § 1, p. 4690, Sen. Rules Com. Analysis of Sen. Bill No. 1159 (1985-1986 Reg. Sess.) as amended Aug. 28, 1986 at pp. 1-3.) Because of the increasing number of claims filed against foster parents by foster children and their natural parents, foster parents were unable to obtain insurance coverage for claims arising from foster parent activities. (*Ibid.*) To relieve the burden of individual liability and to preserve the foster care system, the Legislature established the Fund to "pay, on behalf of foster family homes and small family homes, . . . claims of foster children, their parents, guardians, or guardians ad litem resulting from occurrences peculiar to the foster-care relationship and the provision of foster-care services." (§ 1527.1.)

To achieve the objectives of the statutory scheme, the Legislature included the claims notice requirement set forth in section 1527.6, subdivision (d): "No person may bring a civil action against a foster parent for which the

---

[4] The complaint stated: "[W]ithin one year after [Amber's] death . . . Hill filed a written claim for damages to the County . . . , the contracting agency for the State of California, specifying all the pertinent information required on said form . . . . [¶] . . . [T]he aforementioned claim was rejected in its entirety . . . because of the County's incorrect assertion that the claim was late. *In fact, the claim was not late, and was filed within a timely manner in accordance with the Health and Safety Code section 1527.6, which provides that a claim must be filed with the contracting agency for the State within one year of the date of the death of the decedent.*" (Italics added.)

fund is liable *unless that person has first filed a claim against the fund.*" (Italics added.) The Legislature provided claims against the Fund "must be submitted within the applicable period of limitations for the appropriate civil action underlying the claim." (§ 1527.6, subd. (b).) The Legislature also enacted Insurance Code section 676.2, subdivision (c)(1) (currently Ins. Code, § 676.7, subd. (1)), rendering it against public policy for an insurance company to provide liability coverage to a foster parent for claims of a foster child or natural parent "of a type payable by the [Fund]."

Hill acknowledges she did not file a claim with the Fund. She says, however, she was not required to allege such fact at the pleading stage because (1) her complaint does not affirmatively allege Newkirk operated a foster family home or a small family home as defined in the statute, and (2) her claim is expressly excluded from liability under the Fund. We examine these contentions below.

### 1. *Foster Family Home*

The Fund's claim requirement applies only to those who assert claims against "foster family homes" or "small family homes." (§§ 1527.1, 1527.5, 1527.6, subd. (d).) A "foster family home" is a "residential facility providing 24-hour care for six or fewer foster children that is . . . the residence of the foster parent." (§ 1502, subd. (a)(5).) A "small family home" is similarly defined except the foster children have mental disorders or developmental or physical disabilities requiring special care. (§ 1502, subd. (a)(6).)

Hill's second amended complaint alleges "Newkirk was a resident of San Diego County and a *foster home parent* under the meaning of .Health and Safety Code section 1527.6." (Italics added.) In addition, included with Hill's application to present a late claim with the County, Hill's declaration states "[a]t the time of the child's death, she was living [with] and being cared for by GEAN NEWKIRK, who was a *Fragile Care Foster Home Provider.*" (Italics added.) Hill's appellate brief likewise identifies Newkirk as Amber's foster mother. Hill had the opportunity to depose Newkirk and was given several opportunities to amend her complaint.

On this record, the fact that Hill did not affirmatively allege Newkirk operated a "foster family home" or "a small family home" cannot in and of itself take this case outside the purview of the Fund's claim requirement.

### 2. *Claims Excluded From Liability Under the Fund*

Section 1527.6's claim requirement applies only to those claims "for which the [F]und is liable." (§ 1527.6, subd. (d).) Hill says her claim

is excluded from liability pursuant to section 1527.3 subdivisions (a), (b), and (h).

Section 1527.3 states in pertinent part:

"The fund shall not be liable for any of the following:

"(a) Any loss arising out of a dishonest, fraudulent, criminal or intentional act.

"(b) Any occurrence which does not arise from the foster-care relationship.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(h) any liability of a foster parent which is uninsured due solely to the foster parent's failure to obtain insurance specified in Section 676.2 of the Insurance Code.[5] Nothing in this subdivision shall be construed to expand the liability of the fund with respect to insured foster parents."

With respect to subdivision (a) of section 1527.3, Hill has alleged negligence on the part of Newkirk. She has not alleged any facts which would support any criminal or intentional acts by Newkirk. Therefore this subdivision is inapplicable.

With respect to subdivision (b) of section 1527.3, Hill contends her claim did not arise from the foster-care relationship but from in-home medical

---

[5]Insurance Code former section 676.2 (currently Ins. Code, § 676.7) provided in relevant part:
"(a) No [licensed] insurer . . . shall (1) fail . . . to issue . . . insurance to an applicant . . . solely on the basis that the . . . policyholder is engaged in foster home activities . . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(c) It is against public policy for a policy of homeowner's . . . insurance subject to this section to provide liability coverage for any of the following losses:
"(1) Any claims of a foster child, or a parent [or] guardian . . . thereof, of a type payable by the . . . Fund . . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(3) Alienation of affection of a foster child.
"(4) Any loss arising out of [a foster parent's] licentious, immoral, or sexual behavior . . . .
"(5) Any loss arising out of a dishonest, fraudulent, criminal, or intentional act.
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"(e) Insurers may provide a special endorsement to a homeowners' . . . policy covering claims related to foster care that are not excluded by subdivision (c)."

services pursuant to section 1507.5.[6] Hill's complaint alleged that Amber was placed in New- kirk's care, who then negligently detached Amber's Apnea monitor. The fact that the alleged negligence arose from Newkirk's removal of the breathing monitor does not render the incident outside the foster-care relationship. Section 1507.5, subdivision (a) states the "medical services shall not be considered as a substantial component of the services provided" by the foster parent. Amber was placed in Newkirk's care because Newkirk was a foster parent with the training necessary to provide care for a child with respiratory problems. The complaint contains no facts alleging that at the time of Newkirk's allegedly wrongful conduct Newkirk was anything but a foster parent caring for a foster child.[7]

Finally, section 1527.3, subdivision (h) does not exclude Hill's claim from the Fund's claim filing requirement. Hill interprets this subdivision to mean that the Fund is inapplicable if a foster-parent is otherwise insured. Hill then asserts that since she has no way of determining whether Newkirk is otherwise insured, this subdivision creates a "virtually impossible burden."

While section 1527.3, subdivision (h)'s statutory language is not a model of clarity, our review of the relevant legislative history reveals that section 1527.3, subdivision (h) expresses that the Fund is not liable for claims covered under homeowner's or renter's insurance. In enacting the legislation, the Legislature was aware that foster parents could no longer obtain liability insurance for foster parent activities. Thus, the Fund was established to provide liability coverage for occurrences peculiar to foster care. The claim here is precisely the type of claim the Fund was established to cover.

---

[6]Section 1507.5 states: "(a) In-home medical care and home and community-based services, . . . may, when deemed medically appropriate by the State Department of Health Services, be provided by a licensed home health agency to children with special needs, . . . in foster family homes. For children described in this section, these medical services shall not be considered as a substantial component of the services provided by the licensee for the purposes of Section 1507. To be eligible under this section for placement in a foster home, a child shall be receiving medical supervision and medical case management by an agent designated by the State Department of Health Services.

"(b) No more than two children eligible for services under this section may be placed in a single licensed foster family home at one time.

"(c) The State Department of Social Services and its agents shall not evaluate or have any responsibility or liability for the evaluation of medical services described in this section."

[7]Hill also focuses on section 1507.5, subdivision (c) to support her assertion that her claim is excluded from the Fund. However, subdivision (c) states the Department of Social Services is not liable for the *evaluation* of the medical services and not, as Hill argues, liable at all. Moreover, the Legislature is deemed to know of existing laws when it enacts new statutes. (*Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874].) As such, the Legislature, if it intended section 1507.5 to exclude liability from the Fund, could have simply listed that exemption along with the others listed in section 1527.3.

Thus, section 1527.3, subdivision (h) does not provide a basis for excluding Hill's claim from the reach of the Fund.

## II.

### *Hill Did Not Comply With the Claim Notice Requirement*

Hill alternatively contends that even if she were required to plead compliance with section 1527.6, her claim filed with the County satisfied the statutory requirements.

Section 1527.6, subdivision (a) states, "Any claim against the [F]und shall be filed *with the Fund* in accordance with claims procedures and on forms prescribed by the State Department of Social Services or *its designated contract agency.*" (Italics added.) Hill says she satisfied this requirement by filing her administrative claim with the County because the County was a "contract agency." This contention fails because the statutes make clear that the "designated contract agency" referred to in section 1527.6 is not a local entity such as the County but rather another *state agency.* (See § 1527.1 ["The department may contract with another *state* agency to set up and operate the fund and perform such other administrative functions as may be necessary to carry out the intentions of this article." (Italics added.)].)

Relying on *Carlino* v. *Los Angeles County Flood Control Dist.* (1992) 10 Cal.App.4th 1526, 1533 [13 Cal.Rptr.2d 437], Hill nonetheless maintains the court should have accepted as true (for purposes of the demurrer) her conclusory allegation that she complied with section 1527.6 by filing a claim with the County. In *Carlino,* the plaintiff submitted a claim to the Los Angeles County Board of Supervisors based on the negligence of the Los Angeles County Flood Control District. (10 Cal.App.4th at pp. 1529-1530.) The complaint alleged that the board of supervisors was the proper governing body to file a claim based on several specific facts, including a letter written by the board of supervisors expressly accepting the claim form on behalf of the flood control district. (*Ibid.*) *Carlino* held such facts were sufficient at the pleading stage to establish the Board was the proper body to file the claim; emphasizing the existence of the board of supervisor's letter and facts showing the Board "ultimately controlled" the flood control district. (*Id.* at p. 1533.)

Here, by contrast, Hill failed to allege any facts showing that the County was controlled by the Fund, had any nexus to the Fund, or had made any representations that it was the proper entity with which to file a claim against a foster parent. Hill's reliance on *Carlino* is therefore misplaced.

We likewise reject Hill's contention that her claim filed with the County constituted substantial compliance with the Fund's claim notice requirement. Courts applying the Tort Claims Act in analogous situations have held that a party's filing a claim with the wrong public entity does not constitute substantial compliance with the claims act. (See *Jamison v. State of California* (1973) 31 Cal.App.3d 513, 517 [107 Cal.Rptr. 496] ["The doctrine of substantial compliance is not applicable to a claim which is addressed to the wrong *entity*." (Italics in original.)]; *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702 [269 Cal.Rptr. 605]; *Johnson v. San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 697 [266 Cal.Rptr. 187].)

In *Johnson*, the plaintiff filed a claim with the State Board of Control seeking recovery of damages arising from a local school district's negligence. Emphasizing the "separate distinct character of the [local] school district[s] as distinguished from the state educational entities," this court held the plaintiff failed to substantially comply with the claims statute. (*Johnson v. San Diego Unified School Dist., supra*, 217 Cal.App.3d at p. 699.) The court reasoned that to conclude otherwise would "undermine, if not defeat, the purposes underlying the [Tort Claims] Act" and "result in the shifting of the responsibility of filing a claim with the proper entity from the claimant to the State Board of Control." (*Id.* at p. 700; accord, *Kaslavage v. West Kern County Water Dist.* (1978) 84 Cal.App.3d 529, 538 [148 Cal.Rptr. 729]; *Jackson v. Board of Education* (1967) 250 Cal.App.2d 856, 858-859 [58 Cal.Rptr. 763].)

Similarly, there is no principled basis upon which we could conclude that Hill's filing with the County constituted substantial compliance with section 1527.6. The substantial compliance doctrine applies only where the purposes underlying the claims requirement have been satisfied. (See *Santee v. Santa Clara Office of Education, supra*, 220 Cal.App.3d at p. 713.) As with other claims statutes, the purpose underlying the Fund's claim requirement is to ensure that the Fund is apprised of the claim and has an opportunity to effectively manage its limited resources and to promptly investigate and settle the matter. (See *Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 [263 Cal.Rptr. 119, 780 P.2d 349].) Here, where the Fund was unaware of any claim, such purposes would be defeated.

We also reject Hill's argument that Newkirk is estopped from asserting the claims filing requirement as a defense because neither Newkirk nor the County informed Hill of the claims filing requirement.

Generally, estoppel arises from a party's affirmative conduct which has led the opposing party to believe a particular fact is true and to rely on that

fact to his or her detriment. (See *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423].) The basis for an estoppel can also be found in a party's silence "when he is under a duty to speak." (*Dettamanti* v. *Lompoc Union School Dist.*(1956) 143 Cal.App.2d 715, 721 [300 P.2d 78].) Hill's complaint did not allege Newkirk engaged in any intentional conduct to mislead Hill about the existence of the Fund or the necessity of filing a claim, nor that Newkirk even knew about the Fund before Hill filed suit. Further, even if Newkirk knew or should have known of the Fund, Hill had no contractual or other form of special relationship with Newkirk except as an opposing party in the litigation. Thus, there is no basis to find Newkirk had an affirmative obligation to tell Hill about the Fund's claims requirement.[8]

Similarly, there is no basis to find an estoppel based on the *County's* silence. Although a public entity may be estopped from asserting noncompliance with the claims statutes, this rule applies only where the entity has "prevented or deterred the filing of a timely claim by some affirmative conduct." (*Johnson* v. *San Diego Unified School Dist.*, *supra*, 217 Cal.App.3d at p. 700.) Hill did not allege any facts showing the County affirmatively misled her as to the proper entity with which to file a claim. Moreover, because the County is not Newkirk's agent or an agent of the State Department of Social Services, we cannot hold that Newkirk is estopped from asserting section 1527.6 as a defense solely on the basis of the *County's* failure to disclose the existence of the Fund. (See 217 Cal.App.3d at p. 700 [rejecting an estoppel argument in similar circumstances].)

### III.

### *Constitutional Arguments*

██ Hill contends section 1527.6's claims requirement violates her due process and equal protection rights because there is no rational basis for imposing such requirement. However, as courts have observed with respect to the Tort Claims Act, a legitimate function of a claim filing requirement "is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims. [Citations.]" (*Elias* v. *San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70, 74 [135 Cal.Rptr. 621];

---

[8]We are unpersuaded by Hill's focus on the fact that a foster parent, as well as a third party, can independently file a claim with the Fund. (See § 1527.6, subd. (b).) Contrary to Hill's assertions, the fact that the statutory scheme has provided a method for a foster parent to file a claim against the Fund does not impose an obligation on the foster parent to disclose the existence of the Fund or relieve a plaintiff from the mandatory obligation to file a claim with the Fund before filing suit.

accord, *Johnson* v. *San Diego Unified School Dist., supra*, 217 Cal.App.3d at p. 696.) Although the defendant here is a private (nongovernmental) individual, the government is ultimately the responsible party since it has established a state fund to pay for specified claims made against foster parents arising from foster parent activities. Thus, as with the Tort Claims Act,[9] the Legislature could rationally decide that it is appropriate to require a plaintiff as a precondition to a suit against a foster parent to file a claim with the Fund.

■ We also reject Hill's argument that the statute as written is unconstitutional because, unlike the Tort Claims Act, it does not expressly provide for the application of equitable doctrines including (1) estoppel and waiver principles; (2) the substantial compliance doctrine; and (3) the various procedures for seeking relief from a late claim. The Tort Claims Act does not expressly require the application of estoppel and waiver principles or the substantial compliance doctrine. Rather, courts have read these doctrines into the Act to ensure fairness and to "[prevent] the public entity from using the claims statutes as 'traps for the unwary' . . . . [Citation.]" (See *Nguyen* v. *Los Angeles County Harbor/UCLA Medical Center* (1992) 8 Cal.App.4th 729, 732-733 [10 Cal.Rptr.2d 709].) We agree with Hill that these principles should be applied with equal force in determining whether a plaintiff has complied with the Fund's claims notice requirement. As discussed above, however, there are no facts alleged in Hill's second amended complaint to support the application of the substantial compliance, waiver or estoppel doctrines in this case.

The Tort Claims Act does expressly provide specific procedures for seeking relief from a late claim. (Gov. Code, §§ 911.4, 946.6.) If a public entity denies an application for leave to file a late claim, a claimant must obtain a court order for relief from the requirements of the act before filing suit. (Gov. Code, § 946.6.) The statute sets forth grounds permitting a court to provide such relief, including that the failure to present the claim was through mistake, inadvertence, surprise or excusable neglect. (Gov. Code, § 946.6, subd. (c)(1).)

There is no similar procedure applicable to the Fund's claim requirement. However, even if we read an excusable neglect exception into the statutory scheme, such provision would be of no help to Hill in this case. Hill failed to allege any facts to show that her failure to file a claim with the Fund was the result of excusable neglect. While Hill asserts in her brief that she should be excused from her failure to file a claim because her attorney was unaware of

---

[9]Numerous courts have rejected constitutional challenges to the Tort Claims Act. (See, e.g., *Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 481 [58 Cal.Rptr. 249, 426 P.2d 753].)

the claims filing requirement, she did not allege such fact in her complaint. More importantly, an attorney's ignorance has never been held to be a sufficient excuse to justify an exception to a claims requirement.[10] (See *El Dorado Irrigation Dist.* v. *Superior Court* (1979) 98 Cal.App.3d 57, 62 [159 Cal.Rptr. 267] ["a mere lack of knowledge of the claim-filing requirements . . . is insufficient" to support a basis for relief under Government Code section 946.6].)

Finally, we reject Hill's unsupported contention that section 1527.6 violates the privileges and immunities clauses of the federal and state Constitutions. Section 1527.6 does not provide that foster parents are immune from suit. Instead, it sets forth a precondition, filing a claim within the applicable limitations period, with the Fund. Such precondition does not constitute an unconstitutional immunity.

## IV.

### *Proposed Third Amended Complaint*

■ Hill lastly asserts the court erred in refusing to permit her to file a third amended complaint.

A court should not dismiss a case for deficiencies in the pleadings if there is a "reasonable possibility" the defects can be cured by an amendment. (See *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Hill failed to establish a "reasonable possibility" she could amend her complaint to satisfy section 1527.6.

Hill contends the court erred in refusing to permit her to amend her complaint to include a medical malpractice claim. However, when given the opportunity to amend her complaint, Hill did not include a medical malpractice cause of action nor any facts to support such claim. Moreover, while the Fund expressly excludes claims which do not "arise from the foster-care relationship" (§ 1527.3, subd. (b)), there are no facts here showing that Newkirk's allegedly negligent conduct arose from Newkirk's acting as a health care provider. While Newkirk was licensed as a respiratory therapist, Hill does not assert that Newkirk was acting as a respiratory therapist at the time she was caring for Amber.

[10]*Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 [228 Cal.Rptr. 190, 721 P.2d 71], relied upon by Hill, is distinguishable. *Bettencourt* held relief from strict compliance should have been granted because the claimant's attorney made a reasonable mistake in assuming that the employees of a city college were state employees. Here, by contrast, it is undisputed that Hill and her attorney knew Newkirk was a foster parent and thus were charged with knowing the claims requirements governing an action against a foster parent.

We also reject Hill's contention she should be allowed to amend her complaint to include a multitude of possible equitable grounds upon which a court could find she satisfied the claims requirement. Again, Hill failed to assert these facts in her second amended complaint or in requesting permission to file a third amended complaint. We therefore reject Hill's request we provide her with yet another chance to plead a basis for avoiding the plain language of the statute. Moreover, on our examination of each of these proposed amendments and assuming the principles of estoppel, waiver and excusable neglect do apply to the statutory scheme, none of Hill's proposed facts are sufficient to justify departure from the statutory mandate. On this record, we hold there was no reasonable possibility the defect could be cured by an amendment.

DISPOSITION

Judgment affirmed.

Huffman, Acting P. J., and Froehlich, J., concurred.

A petition for a rehearing was denied August 2, 1994.