[No. H012085. Sixth Dist. Feb. 17, 1995.]

ROSEMARY BECERRA et al., Plaintiffs and Appellants, v.
RICHARD GONZALES et al., Defendants and Respondents.

**COUNSEL**

Valerie A. McGuire for Plaintiffs and Appellants.

Harray, Pierce & Masuda and Michael Masuda for Defendants and Respondents.

**OPINION**

**COTTLE, P. J.**—A 14-year-old child was killed by a third party while she was in the care of her foster parents. Plaintiffs, the natural mother and

siblings of the child, alleged that the foster parents' negligent supervision caused or contributed to the child's death. The foster parents demurred to plaintiffs' amended complaint on the ground that plaintiffs failed to file a claim with the Foster Family Home and Small Family Home Insurance Fund (Fund) as required by Health and Safety Code section 1527.6, subdivision (d).[1] The trial court sustained the demurrer, and plaintiffs appeal from the resulting judgment. For the reasons stated below, we affirm.

FACTS AND PROCEDURAL BACKGROUND

*Underlying Allegations*

In reviewing the trial court's judgment sustaining a demurrer without leave to amend, we accept as true all properly pleaded allegations of the amended complaint. (*Loehr* v. *Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1076 [195 Cal.Rptr. 576].)

Mariana Zavala, a 14-year-old developmentally disabled child, was in the care of her licensed foster parents Richard and Christina Gonzales (defendants). According to the first amended complaint, on the evening of February 9, 1992, the child was visiting at an apartment complex located approximately one mile from the Gonzales home. She attempted to return to the Gonzales home, but the house was locked and she did not have a key, so she returned to the apartment complex. She had no contact with her foster parents from that morning until approximately 10:30 p.m., when she reached them by telephone. At approximately 11 p.m., she was ordered off the premises of the apartment complex by a security guard. The following morning, her dead body was found on a bench at an elementary school across the street from the apartment complex.

Plaintiffs filed this civil suit, asserting a cause of action for wrongful death and negligent supervision against defendants, on December 29, 1992.[2] Defendants demurred, alleging that plaintiffs had not brought a timely claim against the Fund as required by section 1527.6, subdivisions (b) and (d), and were therefore barred from bringing a civil action against them. The trial court sustained this initial demurrer, and granted plaintiffs leave to amend only to allege that defendants were estopped from asserting plaintiffs' failure to bring a timely claim with the Fund.

---

[1]All further statutory references are to the Health and Safety Code unless otherwise specified.

[2]Plaintiffs also named the school district, the State of California, the County of Santa Cruz, the apartment complex, and the security service as defendants in the original complaint. Only the foster parents (defendants herein) are parties to this appeal.

Plaintiffs filed a first amended complaint in July 1993, asserting a cause of action for wrongful death and negligent supervision against defendants,[3] and alleging that defendants were estopped from relying on plaintiffs' failure to file a claim with the Fund. Defendants demurred to this amended complaint. After briefing and argument, the trial court sustained the demurrer without leave to amend and dismissed the case against defendants.

On appeal, plaintiffs argue (1) that they satisfied the statutory prerequisites for this suit, (2) that they substantially complied with the statutory prerequisites, and (3) that defendants are estopped from asserting plaintiffs' failure to file a timely claim with the Fund.

## DISCUSSION

### The Fund and Its Claim Filing Requirements

In 1986, the Legislature established the Fund to address the growing insurance crisis in the state's foster care system. (§ 1527.1; Stats. 1986, ch. 1330, § 1, p. 4690.) Because of the increasing number of claims filed against foster parents by foster children and their natural parents, many foster parents were unable to obtain insurance coverage for claims arising from foster parent activities. (*Ibid.*; see *Hill* v. *Newkirk* (1994) 26 Cal.App.4th 1047, 1052 [31 Cal.Rptr.2d 859].) The Legislature established the Fund to "pay, on behalf of foster family homes and small family homes, . . . claims of foster children, their parents, guardians, or guardians ad litem resulting from occurrences peculiar to the foster-care relationship and the provision of foster-care services." (§ 1527.1.)

Section 1527.6, subdivision (d) contains the following claims presentation requirement: "No person may bring a civil action against a foster parent for which the fund is liable *unless that person has first filed a claim against the fund . . . .*" (Italics added.)

For this claims presentation requirement to apply, the civil action must be one "for which the fund is liable." In this case, plaintiffs are the natural mother and siblings of the child. They have filed a negligence action

---

[3]In the first amended complaint, plaintiffs allege that defendants breached their duty to the child by "negligently failing to adequately supervise her and control her actions, by negligently providing her with a bicycle, thus enabling her to frequent the Green Valley Apartments complex and associate with gang members and other adults and minors, . . . by negligently failing to provide decedent with a key to their home, thus preventing her from returning safely home on the night of her death and by negligently failing to give her a ride to their home after discovering her whereabouts at approximately 10:30 P.M., a few hours before her death."

against the child's foster parents, alleging that the child's wrongful death arose from the foster parents' negligent supervision of the child. Section 1527.2 provides that the Fund "shall pay" claims of parents of foster children "for damages arising from, and peculiar to, the foster-care relationship and the provision of foster-care services, or shall reimburse foster family homes and small family homes for those damages." (§ 1527.2.) Section 1527.5 provides that the Fund "shall be liable, if a claim is approved, to pay on behalf of each licensed foster family home . . . all sums which the foster family home . . . is obligated to pay as a result of a valid claim of bodily injury or personal injury arising out of the activities of a foster parent or foster parents, which occurs while the foster child resides in the foster family home . . . ." Section 1527.5 also provides that claims specified in that section of a foster child or a parent, guardian, or guardian ad litem of a foster child "shall be the sole responsibility of the fund." The claim here is therefore a claim "for which the fund is liable," and the claims presentation requirement of section 1527.6 applies.

Section 1527.6 also provides for the method and timing for submission of claims against the fund. Subdivision (a) provides: "Any claim against the fund shall be filed with the fund in accordance with claims procedures and on forms prescribed by the State Department of Social Services or its designated contract agency." Subdivision (b) provides that claims against the Fund "shall be submitted to the fund within the applicable period of limitations for the appropriate civil action underlying the claim."

In this case, therefore, a claim should have been filed against the Fund on the prescribed forms within one year, the applicable statute of limitations. (See Code Civ. Proc., § 340, subd. (3) [actions "for injury to or for the death of one caused by the wrongful act or neglect of another" must be filed within one year].) Plaintiffs do not contend that any claim was filed directly with the Fund during that time period.

*Applicability of the Tort Claims Act*

On appeal, plaintiffs' first argument is that although they failed to file a claim with the Fund, they nevertheless fulfilled all statutory prerequisites to maintaining this action by complying with the Tort Claims Act. Plaintiffs contend that foster parents are "quasi-state employees," and this case is therefore a suit against a public entity for a tort by its employees. Plaintiffs contend that they complied with the Tort Claims Act claim filing requirement by filing a claim with the State Board of Control, or that they are excused from filing a claim because the Fund was not listed on the Roster of Public Agencies. Defendants argue that the Tort Claims Act does not apply to this case.

The Tort Claims Act (Gov. Code, § 810 et seq.) provides that a "public entity" is liable for an injury proximately caused by an act or omission of an employee of a public entity within the scope of his or her employment, if the act or omission would have given rise to a cause of action against the employee or his or her personal representative. (Gov. Code, § 815.2, subd. (a).) A public entity may also be held liable for an injury caused by a dangerous condition on its property. (Gov. Code, § 835.)

The Tort Claims Act establishes procedures for presenting claims for such acts allegedly committed by public entities and their employees. (See Gov. Code, § 900 et seq.) The claim involved in this appeal, however, is not a claim against a public entity arising from any act of a public entity or its employee. The claim at issue here is against defendants, who are private foster parents. We reject plaintiffs' suggestion that defendants are "arguably quasi-state employees, paid by the state for providing foster care . . . ." There is no evidence that by becoming a foster parent, a private person somehow becomes an "employee" of the state or of any other public entity. Nor is there any allegation that the state supervised defendants' foster parenting duties in any way.

Plaintiffs also argue that the Tort Claims Act sets forth the only ways in which a claim may be presented to a public entity. According to plaintiffs, a claim must be (1) presented to the State Board of Control, if the public entity is the state, or (2) presented to the local public entity if the public entity is a city or county, or (3) presented to the public agency as listed in the Roster of Public Agencies if the public entity is a public agency. Plaintiffs contend: "There is no fourth way to present claims. There is no provision for a claim to be made *directly* to a state agency . . . ."

We disagree. The Tort Claims Act is not the exclusive means of asserting claims the government is obligated to pay. Section 905.4 of the Government Code provides that the Tort Claims Act "shall not be construed to be an exclusive means for presenting claims to the Legislature . . . ." Other statutes may, and have, contained their own claims presentment procedures. (See, e.g., *County of Mendocino* v. *State of California* (1971) 22 Cal.App.3d 90, 93-95 [98 Cal.Rptr. 904] [Emergency Flood Relief Law contained its own claims statute, and therefore general claims statute did not apply]; *Piazza Properties Ltd.* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 622 [138 Cal.Rptr. 357] [action to recover erroneously collected motor vehicle license fees was barred where refund application did not comply with procedure set forth in Vehicle Code].)

In this case, the Legislature has clearly provided claims presentment procedures different from those in the Tort Claims Act. For example, a

wrongful death claim against foster parents must be submitted to the Fund within the applicable statute of limitations of one year (see § 1527.6, subd. (b), Code Civ. Proc., § 340, subd. (3)), whereas a wrongful death claim against a public entity under the Tort Claims Act must be filed within six months (Gov. Code, § 911.2). The Fund has 180 days to accept or reject a claim, (§ 1527.6, subd. (c)) whereas the Tort Claims Act requires that claims be accepted or rejected within 45 days after submission. (Gov. Code, § 912.4.) It is clear that the Legislature, in providing these specific procedures, intended that claims be separately submitted to the Fund under section 1527.6. Plaintiffs' filing of a claim with the State Board of Control under the Tort Claims Act, therefore, did not fully comply with section 1527.6.

Plaintiffs also argue that they are excused from submitting a claim to the Fund because the Fund did not file a statement with the Roster of Public Agencies as required by section 946.4 of the Government Code. Under that section, the failure to present a timely claim to certain local public entities is not a bar to an action if the entity defendant has failed to make timely filing of its information statement, required by Government Code section 53051, in the Roster of Public Agencies. This provision is part of the claims presentment procedures of the Tort Claims Act. For the reasons outlined above, however, the Tort Claims Act does not apply to this case. Even if we were to assume, as plaintiffs urge, that the Fund is a "public agency" within the meaning of Government Code section 946.4,[4] that section does not apply to excuse plaintiffs' failure to file a claim against the Fund. The statute establishing the Fund does not contain any similar provision excusing filing of claims with the Fund.

*Substantial Compliance*

█ Plaintiffs contend that their claim filed with the State Board of Control substantially complied with the claims presentation requirements of section 1527.6. They argue that because their claim reached the State Department of Social Services, which is affiliated with the Fund, it was sufficient to satisfy the purposes of section 1527.6.

█ Although the substantial compliance doctrine is not expressly included in the statute establishing the Fund (cf. Gov. Code, § 910.4), we agree that this doctrine should be applied in determining whether a plaintiff

---

[4]Defendants argue that the Fund is not a "public agency" for this purpose because Government Code section 946.4, subdivision (a) uses the term "public agency" "as defined in [Government Code] section 53050," and section 53050 expressly states that the term "public agency" "does not include the state." According to defendants, the Fund, as a department within the state, is not required to file a statement in the Roster of Public Agencies. Because this is not an action under the Tort Claims Act, we do not address this contention.

has complied with the Fund's claims notice requirements. (Accord, *Hill* v. *Newkirk, supra,* 26 Cal.App.4th at p. 1059.)

Under the substantial compliance doctrine, a court may conclude that a claim is valid if it substantially complies with all of the statutory requirements for a valid claim even though it is technically deficient in one or more particulars. (*Santee* v. *Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 [269 Cal.Rptr. 605].) The doctrine is based on the premise that substantial compliance fulfills the purpose of the claims statutes. (*Ibid.*) "As with other claims statutes, the purpose underlying the Fund's claim requirement is to ensure that the Fund is apprised of the claim and has an opportunity to effectively manage its limited resources and to promptly investigate and settle the matter." (*Hill* v. *Newkirk, supra,* 26 Cal.App.4th at p. 1057, citing *Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 (263 Cal.Rptr. 119, 780 P.2d 349).)

 Applying this substantial compliance principle, we have carefully reviewed the claims filed with the state in this case. We do not believe they are sufficient for "substantial compliance," because they contain absolutely no indication that the plaintiffs are asserting any claim against either the foster parents or the Fund.[5]

The two documents submitted to the state are plaintiffs' government tort claim, and a follow-up letter from plaintiffs' counsel to the State of California. The government tort claim, a one-page form dated April 27, 1992, was sent to the State Board of Control on May 4, 1992. It stated that plaintiffs alleged damages of $5 million based on the wrongful death of Mariana Zavala. In response to the form's request to explain the circumstances and to name the state agency and/or state employee that allegedly caused the damage or injury, plaintiffs stated: "Mariana Zavala, the daughter and sister of claimants, was murdered at the above location, on the above date, after being placed in the care and custody of foster parents by the County of Santa Cruz Child Protective Services, which is administered and supervised by the State of California."

Later, apparently in response to a request for additional information, plaintiffs sent a letter dated June 25, 1992, to the State Board of Control. This letter stated: "1. The claim is being filed against the State of California, Department of Social Services. [¶] 2. It is claimants' contention that the Department of Social Services failed to adequately oversee, supervise and

---

[5]We express no opinion as to whether plaintiffs' submission of a claim to the State Board of Control would have constituted "substantial compliance" if the claim had clearly set forth plaintiffs' assertion of a claim against the foster parents or the Fund.

manage the Santa Cruz County Child Protective Services agency which placed the deceased, Mariana Zavala, in the foster home of Richard and Christina Gonzales. This failure on the part of the department ultimately led to placement of Zavala in the foster home of the Gonzales[es] where Zavala was too close to her original home and the destructive environment surrounding her original home, and where Zavala was not properly supervised and cared for. These factors ultimately led to her murder on February 9, 1992."

The state responded with a letter to plaintiffs' counsel, dated September 30, 1992, stating: "The State Board of Control, at its meeting of September 15, 1992 rejected this claim." This rejection letter indicated that a copy of the rejection had been sent to the Department of Social Services.

Neither the original claim nor the follow-up letter informed the recipient that any claim was being asserted against the foster parents or the Fund. Instead, the claim and follow-up letter appeared to present a claim against the state itself for negligence. In their original complaint, plaintiffs did assert a cause of action against the state for negligence.[6] It is this claim against the state for negligence that was considered and rejected by the state in its rejection letter.

This failure to apprise the recipient that a claim was being made against the foster parents or the Fund is not a minor or technical defect of form with the claim, but a factual basis for recovery that is not fairly reflected in the written claim. The doctrine of substantial compliance cannot cure a total omission of this essential element of a claim. (See, e.g., *Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434-435 [253 Cal.Rptr. 587] [plaintiff's cause of action for negligent supervision by school employees was barred where prior written claim for injuries had not alleged negligent supervision]; *Loehr* v. *Ventura County Community College Dist., supra,* 147 Cal.App.3d at p. 1083 [plaintiff's action for damages was barred where his letter had sought reinstatement to position of employment but contained no claim for money damages]; *Shelton* v. *Superior Court* (1976) 56 Cal.App.3d 66, 82 [128 Cal.Rptr. 454] [amendment to add loss of consortium was barred where parties had filed claims alleging damages for personal injuries to each spouse in accident but not for loss of consortium].)

The claim and letter sent to the state set forth the circumstances surrounding the child's death. This notice of the factual circumstances, however, is insufficient to constitute substantial compliance. ■ "It is well-settled

---

[6]Later, in their first amended complaint, plaintiffs did not assert any cause of action against the state.

that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 455 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) For example, in *Jackson* v. *Board of Education* (1967) 250 Cal.App.2d 856 [58 Cal.Rptr. 763], a wrongful death claimant joined the City of Los Angeles and the Los Angeles Board of Education as defendants, but presented a claim only to the city. Affirming a dismissal of the board of education, the court noted that each of the defendants was a separate and distinct public entity, separately liable for its own torts, and that "the contents of the claim gave no indication that appellant was seeking damages against the board of education." (*Id.* p. 860.) ■ Similarly, here the state was not required to infer that a claim was being made against the foster parents or the Fund when the only claim presented was against the state.

Because there was no indication of any claim asserted against the Fund or the foster parents, there was no reason for the Fund to investigate the matter or to attempt to settle the claim. The purposes of the claims presentation requirement of section 1527.6 were therefore not satisfied by the claims filed here. Accordingly, we hold that plaintiffs' claims were not in substantial compliance with the Fund's claims presentation statute. Although we acknowledge the difficulties of practitioners faced with claims filing requirements, to hold that these claims substantially complied with section 1527.6 would frustrate the public purposes of the statute.

*Estoppel*

■ Plaintiffs also argue that both defendants and the Fund are estopped from asserting plaintiffs' failure to file a claim with the Fund. (7) Generally, estoppel arises from a party's affirmative conduct which has led the opposing party to believe a particular fact is true, and to rely on that fact to his or her detriment. (See *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488 [91 Cal.Rptr. 23, 476 P.2d 423].) The basis for an estoppel can also be found in a party's silence " 'when he is under a duty to speak.' " (*Hill* v. *Newkirk*, *supra*, 26 Cal.App.4th at p. 1058 [quoting *Dettamanti* v. *Lompoc Union School Dist.* (1956) 143 Cal.App.2d 715, 721 (300 P.2d 78)].) (See also 11 Witkin, Summary of Cal. Law (1990) Equity, § 177 p. 858.)

■ Plaintiffs argue that estoppel should be applied here for two reasons: (1) defendants and their insurance agent led plaintiffs to believe that

the claim would be covered by private insurance; and (2) the Fund learned of the claim, and therefore is estopped from asserting that no claim was filed.

First, as plaintiffs concede, defendants "did not have a duty to advise appellants of the law, or of the necessity of filing a claim with the Foster Home Fund . . . ." Defendants had no contractual or other form of special relationship with plaintiffs except as an opposing party in the litigation. " 'Mere silence will not create estoppel unless the silent party was under some obligation to speak, and a party invoking such estoppel must show that it was the duty of the other to speak . . . .' " (*Chaplis* v. *County of Monterey* (1979) 97 Cal.App.3d 249, 262 [158 Cal.Rptr. 395].) Thus, there is no basis to find that defendants had any affirmative obligation to tell plaintiffs' counsel about the Fund or its claim requirements. (See *Hill* v. *Newkirk, supra*, 26 Cal.App.4th at p. 1058.) Nor was plaintiffs' counsel entitled to rely on defendants to inform her of the law. (See *Life* v. *County of Los Angeles* (1991) 227 Cal.App.3d 894, 902 [278 Cal.Rptr. 196] [court dismissed estoppel claim, noting that attorney could not reasonably rely on the advice of a hospital employee in filing a tort claim with the hospital's "legal department" rather than with the board of supervisors].)

Plaintiffs argue, however, that defendants are estopped because they "deceived and coerced plaintiffs into believing that the plaintiffs' claim would be covered under a homeowner's insurance policy, until after the time period for the timely filing of a claim had expired . . . ."[7] This allegation is insufficient to plead estoppel because the existence or nonexistence of private insurance coverage is irrelevant. Plaintiffs argue that the Fund "only applies to foster parents without private insurance." This is incorrect. Section 1527 creates no exception to the claims presentation requirement for claims by natural parents against foster parents who have private insurance. In fact, as part of the legislation establishing the Fund, the Legislature enacted Insurance Code section 676.7, which provides that it is against public policy for an insurance company to provide liability coverage to a foster parent for claims of a foster child or natural parent "of a type payable by the [Fund]." The claim filing requirement of section 1527.6 applies regardless of private insurance coverage, and what plaintiffs were told about such coverage is therefore irrelevant.

---

[7]Plaintiffs base this argument on the fact that within two months of the child's death, plaintiffs' counsel wrote to defendants and asked them for the name of their insurance company. Plaintiffs' counsel was subsequently contacted by an adjuster for the insurance company, who allegedly stated that the Gonzaleses were insured and that their policy limits were very high, and that the company was investigating the claim. Plaintiffs' counsel later received a copy of a letter from the insurance company to defendants, dated December 1992, in which the insurance company declined to cover the loss.

Plaintiffs argue that in addition to estoppel of the defendants, the Fund should also be estopped from asserting plaintiffs' failure to file a timely claim with the Fund. "The estoppel defense that is raised against [defendants] also applies to the Foster Home Fund." ■ A public entity may be estopped from asserting noncompliance with claims statutes where the entity has "prevented or deterred the filing of a timely claim by some affirmative conduct." (*Johnson* v. *San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 700 [266 Cal.Rptr. 187].) ■ Plaintiffs allege no facts showing that the Fund affirmatively misled them regarding the procedural or time requirements of the claims statute, and there is therefore no basis for estoppel against the Fund.

Finally, plaintiffs argue that their lawsuit against defendants should be allowed because the defendants may make a claim for indemnity to the Fund for any damages they must pay to plaintiffs. Section 1527.6, subdivision (d), however, provides: "No person may bring a civil action against a foster parent for which the fund is liable unless *that person* has first filed a claim against the fund . . . ." (Italics added.) California courts construing other claims presentation statutes have consistently held that the claims presentation statutes are not satisfied by a claim made by another plaintiff. (See, e.g., *Roberts* v. *State of California* (1974) 39 Cal.App.3d 844, 848 [114 Cal.Rptr. 518] [claim by workers' compensation carrier did not constitute compliance by injured employee's widow]; *Lewis* v. *City and County of San Francisco* (1971) 21 Cal.App.3d 339, 341 [98 Cal.Rptr. 407] [failure of heirs to present claim for wrongful death was not cured by prior claim for personal injuries presented by victim].) It would negate the Legislature's purpose in enacting the claims presentation requirement if those who failed to file claims could avoid the requirement by arguing that the foster parents may later make a claim for indemnity.

*Conclusion*

■ When a demurrer has been sustained without leave to amend, plaintiff-appellant has the burden of showing that the trial court abused its discretion in sustaining the demurrer. (*O'Keefe* v. *Atascadero County Sanitation Dist.* (1971) 21 Cal.App.3d 719, 730-731 [98 Cal.Rptr. 878].) Section 1527.6 expressly requires plaintiffs to file a claim against the Fund in cases such as this one. Plaintiffs did not file a claim, and were not excused from filing a claim. Defendants are not estopped from relying on the claims presentment statute. The superior court therefore did not abuse its discretion in sustaining defendants' demurrer without leave to amend.

## Disposition

The judgment is affirmed.

Wunderlich, J., and Mihara, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 31, 1995.